IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MURANDA DAWN WALPOLE                                                  PLAINTIFF

V.                                        NO. 16-2026

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Muranda Dawn Walpole, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income ("SSI") under the provisions of Title XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed her application for SSI on September 3, 2013, alleging disability beginning June 2, 2012, due to a learning disorder, leg and back pain, scoliosis, depression, anxiety, mood swings, and post-traumatic stress disorder ("PTSD"). (ECF No. 11 pp. 226, 240, 289). An administrative hearing was held on September 4, 2014, at which Plaintiff appeared with counsel and testified. (ECF No. 11, pp. 77-92).

By written decision dated January 23, 2015, the Administrative Law Judge ("ALJ") found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – borderline intellectual functioning. (ECF No. 11, pp. 19-20).

1

After reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (ECF No. 11, pp. 21-23). The ALJ determined Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but that she has nonexertional limitations and is limited to work with simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, workplace changes. She can have no more than incidental contact with coworkers, supervisors and the general public.

(ECF No. 11, pp. 23-25). With the help of the vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a labeler/stamper. (ECF No. 11, p. 25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied her request on January 15, 2016. (ECF No. 11, p. 6). Subsequently, Plaintiff filed this action. (ECF No. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (ECF Nos. 12, 13).

## II.    Evidence Presented:

Before addressing the evidence, the Court deems it important to note that the relevant time period in this case is limited. SSI may not be granted prior to a claimant's application filing date, because benefits through an SSI application are allowed only after all regulatory criteria are established, namely after the SSI application is filed. See 20 C.F.R. § 416.335; Jernigan v. Sullivan, 948 F.2d 1070, 1072 n. 3 (8th Cir. 1991). Therefore, Plaintiff must prove that her disability commenced on or after September 3, 2013, her application date, and continued through January 23, 2015, the date of the ALJ's decision.

Plaintiff previously received Social Security benefits as a child and as an adult, but her benefits were discontinued based on her resources after she became married. (ECF No. 11, pp.

81-82). Plaintiff previously filed an application for disability insurance benefits and supplemental security income on January 12, 2010, which was subsequently denied at the hearing level on March 29, 2011. (ECF No. 11, pp. 118, 130). On August 22, 2011, Plaintiff protectively filed an application for supplemental security income and alleged disability beginning May 8, 2011. (ECF No. 11, p. 99). The ALJ in that case issued a written unfavorable decision on June 1, 2012. (ECF No. 11, p. 96). The Appeals Council denied Plaintiff's request for review of that case on March 19, 2013. (ECF No. 11, p. 112). Subsequently, the alleged onset date in the case at hand is June 2, 2012. (ECF No. 12).

Plaintiff places at issue numerous records created before Plaintiff's application date of September 3, 2013. (ECF No. 12). Specifically, Plaintiff places at issue those records evincing Plaintiff's alleged mental impairments, and her alleged physical impairments associated with her history of abdominal pain, nausea, and vomiting. (ECF No. 12).

The record contains some evidence of Plaintiff's alleged mental impairments from 2010 and 2011. Dr. Frankie Clark performed a psychological evaluation of Plaintiff on March 30, 2010. (ECF No. 11-1, pp. 2-10). Dr. Clark administered the Wechsler Adult Intelligence Scale-Third Edition ("WAIS-III"), and determined Plaintiff had a verbal IQ of 69, performance IQ of 78, and a full scale IQ of 71. (ECF No. 11-1, pp. 8-9). Dr. Clark also administered the Wide Range Achievement Test-Revision 3 ("WRAT-3") and interpreted Plaintiff's abilities in the areas of reading, spelling, and arithmetic at the third grade level of equivalency. (ECF No. 11-1, p. 8). Dr. Clark diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Depressive Disorder, NOS (depressed mood most of the day, diminished interest in activities, diminished ability to concentrate) |
| Axis II: | Borderline Intellectual Functioning (Full Scale IQ=71) |
| Axis III: | Deferred to physician |
| Axis IV: | Occupational problems (unemployed) |

3

     Axis V:        GAF=65 (current)

(ECF No. 11-1, p. 9).

Plaintiff had another mental diagnostic evaluation on September 23, 2011, performed by Dr. Terry Efird. (ECF No. 11-2, pp. 172-75). Dr. Efird did not perform any diagnostic tests, but diagnosed Plaintiff as follows:

     Axis I:        Deferred
     Axis II:       Borderline Intellectual Functioning
     Axis V:       55-65

(ECF No. 11-2, p. 174). Dr. Efird reported Plaintiff retained the ability to: drive unfamiliar routes; shop independently; handle personal finances using cash; and interact socially on the telephone. (ECF No. 11-2, p. 175). Dr. Efird also opined that Plaintiff: communicated in a socially acceptable manner; effectively communicated basic information; could perform basic cognitive tasks; was able to track and respond appropriately; completed most tasks within an acceptable time; and had no problems with persistence. (ECF No. 11-2, p. 175).

Plaintiff made numerous visits to Sparks ER in 2011 with complaints of abdominal pain, nausea, and vomiting. On August 19, 2011, Plaintiff complained at Sparks ER of abdominal pain with vaginal bleeding and knee pain. (ECF No. 11-2, pp. 167-70). She was diagnosed with knee pain and metromenorrhagia.[1] Id. Although the record indicates the attending physician counseled Plaintiff regarding her medication, the available medical record does not indicate the medication prescribed during the visit. Id. Plaintiff again complained of abdominal pain four days later, on August 23, 2011. (ECF No. 11-2, pp. 161-66). A CT of her

---

[1] Metromenorrhagia is a combination of menorrhagia and metrorrhagia, ultimately classified as dysfunctional uterine bleeding which is not otherwise caused by a tumor, infection, or pregnancy. 3 Tish Davidson, *Dysfunctional Uterine Bleeding*, *in* THE GALE ENCYCLOPEDIA OF MEDICINE 1613-1616 (Jacqueline L. Longe ed., 5th ed. 2016).

abdomen revealed potential early stage acute appendicitis but was otherwise unremarkable. Id. The following day, August 24, 2011, Plaintiff returned to Sparks ER regarding her abdominal pain. (ECF No. 11-2, pp. 155-60). She was diagnosed with abdominal pain and nausea and prescribed Phenergan 20mg tablets for nausea and vomiting, and Tramadol 50mg tablets for pain. Id. Plaintiff again complained of abdominal pain, but additionally blood clots in her menstrual blood, on December 30, 2011. (ECF No. 11-1, pp. 107-13). A CT scan of her abdomen was conducted, and the results were normal and unremarkable. Id. Plaintiff was diagnosed with dysmenorrhea[2] and a UTI. Id. Although the record indicates the attending physician counseled Plaintiff regarding her medication, the available medical record does not indicate the medication prescribed during the visit. Id.

On December 31, 2011, Plaintiff returned to Sparks ER and complained of vaginal bleeding. (ECF No. 11-1, pp. 114-18). Plaintiff was approximately five weeks pregnant. Id. Plaintiff was diagnosed with vaginal bleeding and threatened miscarriage, was advised to follow up with a primary care physician, and was not prescribed any medication. Id. The bleeding did not stop, and Plaintiff returned three days later on January 3, 2012. (ECF No. 11-1, pp. 119-21). She was diagnosed as having suffered a spontaneous abortion, and was discharged without medication. Id. On March 19, 2012, Plaintiff complained of abdominal pain. (ECF No. 11-1, pp. 131-38). An ultrasound was conducted, which showed mild fatty infiltration of the liver, but the results were otherwise normal and unremarkable. Id. A chest x-ray was also taken, which showed no acute infiltrates, no free air below the hemidiaphragm, no free intraperitoneal air, and a nonspecific bowel gas pattern. Id. Plaintiff was diagnosed

---

[2] Dysmenorrhea refers to "the occurrence of painful cramps during a woman's menstrual period." 3 Teresa G. Odle, & Rebecca J. Frey, *Dysmenorrhea*, in THE GALE ENCYCLOPEDIA OF MEDICINE 1620-1624 (Jacqueline L. Longe ed. 5th ed. 2016).

with abdominal pain and prescribed Phenergan 25mg tablets for nausea and vomiting, and Tramadol 50mg tablets for pain. Id. Plaintiff returned on April 18, 2012, and complained of nausea and vomiting. (ECF No. 11-1, pp. 139-42). She was diagnosed with biliary colic and prescribed Lorcet Plus 650mg-7.5mg tablets for pain, and Phenergan 25mg tablets for nausea and vomiting. Id. Plaintiff returned to Sparks ER four days later on April 22, 2012, with abdominal pain, and was admitted to the hospital until April 24, 2012. (ECF No. 11-1, pp. 143-69). A CT scan and NM Hepatobiliary Scan with CCK revealed Plaintiff's gallbladder ejection fraction was normal. Id. A CT scan of Plaintiff's abdomen and pelvis located a 2cm left ovarian cyst and was otherwise negative. Id. An Esophagogastroduodenoscopy ("EGD") was conducted, which showed mild inflammation of the gastroesophageal junction post biopsies and benign gastroesophageal junction mucosa with mild chronic inflammation, and was otherwise normal. Id. Plaintiff was diagnosed with abdominal pain, vomiting, mild dehydration, and pancreatitis. Id. On May 26, 2012, Plaintiff again complained of abdominal pain. (ECF No. 11-1, pp. 170-73). She was diagnosed with chronic abdominal pain and a UTI and was prescribed Ultram 50mg tablets for pain, Phenergan 25mg tablets for nausea and vomiting, Bactrim DS tablets, and Pepcid 20mg tablets. Id.

On June 26, 2012, Plaintiff complained of nausea and vomiting while pregnant. (ECF No. 11-1, pp. 174-77). She was diagnosed with hyperemesis gravidarum[3], mild dehydration, and abdominal pain and prescribed Zofran 4mg tablets for nausea and vomiting, and Lortab 7.5mg/500mg tablets for pain. Id. Plaintiff complained of abdominal pain on July 15, 2012, and was diagnosed with a urinary tract infection ("UTI") with cystitis and was prescribed

---

[3] Hyperemesis gravidarum is "excessive vomiting during pregnancy." 4 Altha Roberts Edgren, *Hyperemesis Gravidarum, in* THE GALE ENCYCLOPEDIA OF MEDICINE 2540 (Jacqueline L. Longe ed., 5th ed. 2016).

Keflex. (ECF No. 11-1, pp. 178-81). On August 9, 2012, Plaintiff complained of abdominal and foot pain, which the attending physician diagnosed as an accidental fall with abdominal and foot contusions. (ECF No. 11-1, pp. 184-87). Plaintiff was prescribed Flexeril 10mg tablets for spasms. Id. Plaintiff again complained of abdominal pain on September 8, 2012, and was diagnosed with abdominal pain, nephrolithiasis, urolithiasis, and a UTI.[4] (ECF No. 11-1, pp. 188-94). Although the record shows the attending physician counseled Plaintiff regarding prescribed medications, the associated medical records do not name her prescribed medications. Id. Plaintiff presented to Sparks ER again on November 17, 2012, with complaints of nausea and vomiting. (ECF No. 11-2, pp. 109-12). She was diagnosed with gastroenteritis, but the record does not indicate whether she was prescribed any medication. Id.

Although Plaintiff visited Sparks ER one more time in 2012 and again in March of 2013, she did not complain of abdominal pain again until April 22, 2013. (ECF No. 11-2, pp. 119-25). She was diagnosed with a UTI and prescribed Phenazopyridine 100mg tablets and Bactrim DS oral tablets. Id. Plaintiff returned to Sparks ER three days later, on April 25, 2013, and complained of abdominal pain. (ECF No. 11-2, pp. 126-34). A CT scan of her left abdomen was conducted and was unremarkable. Id. She was diagnosed with abdominal pain and prescribed Prevacid 30mg tablets, Ondansetron 8mg tablets, and Demerol 50mg tablets for pain. Id. Plaintiff again complained of abdominal pain on May 16, 2013, and was diagnosed

---

[4] Nephrolithiasis refers to the formation of stones in the kidneys and urolithiasis refers to the formation of stones in the bladder and urinary passages. *Nephrolithiasis, in* "*nephron-comb. form.*," *in* OED Online. Oxford University Press, (Sept. 9, 2016), *Urolithiasis*, *in* "*uro-, comb. form1.,*" in OED Online. Oxford University Press, (Sept. 9, 2016).

with a UTI. (ECF No. 11-2, pp. 135-39). She was prescribed Bactrim DS tablets, Zofran 4mg tablets, and Acetaminophen-Hydrocodone 500mg-5mg capsules for pain. Id.

The record does contain some medical evidence from the relevant time period. The non-examining State Agency consultant, Dr. Christal Janssen, completed a mental RFC assessment on October 16, 2013. (ECF No. 11, pp. 124-126). Dr. Janssen determined Plaintiff had moderate limitation in some areas, but was not otherwise significantly limited. Id. Dr. Janssen opined Plaintiff's activities of daily living did not indicate a significant impairment, despite Plaintiff indicating some problems with her mood and ability to get along with others. Id. Dr. Janssen's assessment supports a determination that Plaintiff could perform unskilled work. Id.

Plaintiff visited the Emergency Department of Sparks Regional Medical Center ("Sparks ER") on October 23, 2013, and complained of a cough lasting approximately two weeks, and lower back pain. (ECF No. 11-2, pp. 89-91, 142-144). Plaintiff was diagnosed with bronchitis and an upper respiratory infection and prescribed Acetaminophen-Codeine 300mg – 30mg tablets and Azithromycin 5-day dose pack 250mg tablets. Id. Six days later, on October 29, 2013, Plaintiff had x-ray imaging done on her spine. (ECF No. 11-2, pp. 6, 9, 13, 92, 145). The results were normal except for very slight dextroscoliosis. Id.

Dr. Clifford Evans conducted a consultative examination, requested by the state disability determination agency, on November 14, 2013. (ECF No. 11-2, pp. 16-20). Dr. Evans determined Plaintiff had mental limitations associated with her Borderline Intellectual Functioning, but otherwise did not have any physical limitations. (ECF No. 11-2, pp. 16-20).

Plaintiff again visited Sparks ER on December 27, 2013, complaining of a cough, body aches, fever, nausea, and vomiting. (ECF No. 11-1, pp. 202-03); (ECF No. 11-2, pp. 93-94,

146-148). Plaintiff was diagnosed with influenza and prescribed Tamiflu 75mg oral capsules, Norco 325mg – 7.5mg tablets for pain, and Zofran 4mg tablets for nausea and vomiting. Id. Based on examination of the record, Plaintiff received no further treatment during the relevant time period.

The non-examining State Agency consultant, Dr. Susan Daugherty, completed a mental RFC assessment on January 16, 2014. (ECF No. 11, pp. 137-39). Dr. Daugherty opined Plaintiff had moderate limitation in some areas, but was not otherwise significantly limited. Id. Dr. Daugherty's assessment noted Plaintiff had some problems with her mood and ability to get along with others, but overall, her activities of daily living demonstrated she was able to perform unskilled work where interpersonal contact was incidental to the work performed. Id.

**III.    Applicable Law:**

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. 20 C.F.R. § 416.920(a)(4). Only if she reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. see McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920(a)(4)(v).

**IV.     Discussion:**

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred in his determination that Plaintiff did not meet the requirements of Listing 12.05; 2) and, Whether the ALJ failed to properly develop the record. (ECF No. 12).

### A. Listing 12.05:

Plaintiff contends she met the specified medical criteria of Listing 12.05(C), which reads as follows:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). Plaintiff does not argue she meets the criteria of paragraphs A, B, or D of the listing. The "paragraph C" criteria of Listing 12.05 essentially requires Plaintiff to have an additional severe impairment accompanying Borderline Intellectual Functioning to satisfy the criteria and result in a finding of total disability.

Plaintiff argues the ALJ erred in his analysis at steps two and three of the sequential analysis, and that Plaintiff had a second severe impairment, and therefore met the criteria of Listing 12.05(C). (ECF No. 12). Specifically, Plaintiff argues her past diagnosis of Depressive Disorder and her history of abdominal pain, nausea, vomiting, and gastritis are severe impairments and are sufficient to meet the paragraph "C" criteria of Listing 12.05. Id. An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical

11

and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989). "While '[s]everity is not an onerous requirement for the claimant to meet . . . it is also not a toothless standard.'" Wright v. Clovin, 789 F.3d 847, 855 (8th Cir. 2015) (quoting Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007). The claimant has the burden of proving her impairment meets or equals a listing. See Carlson v. Astrue, 604 F.3d 589, 593 (8th Cir. 2010), Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Brown ex rel. Williams v. Barnhart, 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted). Furthermore, the question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted). While it is preferable an ALJ address a specific listing, the failure to do so is not reversible error if the record supports the overall conclusion. See Pepper ex rel. Gardner v. Barnhart, 342 F.3d, 853, 855 (8th Cir. 2004), Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001).

The record does not support a finding that Plaintiff suffered from any severe mental or physical impairments in addition to Borderline Intellectual Functioning, during the relevant period. As discussed above, Plaintiff visited Sparks ER on numerous occasions during the relevant period and sought treatment for cough, body aches, fever, nausea, and vomiting. Plaintiff did not report any symptoms during those encounters suggestive of a severe mental

12

health impairment requiring treatment. Plaintiff contends that "[n]eeding emergency psychiatric care or hospitalization . . . is a level of severity far beyond that which is necessary to satisfy the 12.05(C) requirements," and this Court agrees. The record indicates, however, that Plaintiff used Sparks ER as her primary source of medical care. Plaintiff regularly visited Sparks ER nearly monthly, and occasionally more than once per month, and sought medical treatment for numerous non-emergency medical conditions. Plaintiff never reported symptoms, requested information, was prescribed medicine, or sought specific treatment for any mental health impairment during the relevant period.

Plaintiff points to the conflicting evaluations of Dr. Clark and Dr. Efird in 2010 and 2011, respectively, for evidence of a severe mental impairment. (ECF No. 12). Dr. Clark's assessment was conducted on March 30, 2010, and associated with Plaintiff's January 12, 2010, application for disability insurance benefits and supplemental security income, which was previously denied and not reopened. Dr. Efird's assessment was conducted on September 23, 2011, and associated, along with Dr. Clark's assessment, with Plaintiff's August 22, 2011, application for supplemental security income which was previously denied and not reopened. Neither assessment is sufficient to show Plaintiff suffered from a severe mental impairment from either the alleged onset date of June 2, 2012, or Plaintiff's application date of September 3, 2013, through the date of the ALJ's decision. As discussed above, the record contains no evidence Plaintiff ever reported symptoms, requested information, was prescribed medicine, or sought specific treatment for any mental health impairment described or diagnosed by Dr. Clark or Dr. Efird after their reports were made.

Plaintiff argues that the ALJ's decision to rate Plaintiff's mental impairments at the moderate level in the areas of social functioning, concentration, and persistence and pace

required the ALJ to determine Plaintiff's mental impairment is a severe impairment based on the ruling in the case of Maresh v. Barnhart, 438 F.3d 897, 900 (8th Cir. 2006). Maresh is a similar case to the one at hand in that the Appellant in the case argued he met the paragraph "C" criteria of Listing 12.05. Id. The Court in Maresh determined the ALJ's decision was not supported by substantial evidence on the record and directed the Commissioner to award benefits. Id. at 901. The case at hand differs from Maresh in one important way: the ALJ in Maresh determined Appellant Maresh's personality disorder was a severe impairment. Id. at 900-01. Moderate limitation in the areas of social functioning, concentration, persistence and pace were listed as evidence supporting the determination that Appellant Maresh's personality disorder was a severe impairment, but the Court in Maresh also cited to numerous other pieces of evidence as well, including the fact that Appellant Maresh, "once waited on the porch with a shotgun after becoming upset with another man," and the opinion of Appellant Maresh's social worker who stated, "'[Maresh] has one of the most disabling personality disorders I have seen in my eleven years at the mental health center.'" Id. at 901. In the case at hand, the ALJ determined Plaintiff did not have another severe mental impairment accompanying her Borderline Intellectual Functioning. Given the evidence in the record now before the Court, this Court finds the ALJ's determination that Plaintiff did not suffer from another severe mental impairment accompanying her Borderline Intellectual Functioning is supported by substantial evidence on the record as a whole.

Plaintiff's argument that her history of abdominal pain, nausea, vomiting, and gastritis constitutes a severe physical impairment thereby satisfying the paragraph "C" criteria of Listing 12.05 is also without merit. As discussed above, the Plaintiff did complain to Sparks ER with symptoms of cough, body aches, fever, nausea, and vomiting during the relevant

14

period. On that one occasion, she was diagnosed with influenza and prescribed medication. (ECF No. 11-1, pp. 202-03); (ECF No. 11-2, pp. 93-94, 146-48). There is no further evidence in the record suggesting her condition persisted after receiving the treatment and medication. Between the alleged onset date of June 2, 2012, and the start of the relevant period, Plaintiff complained of abdominal pain, nausea, vomiting, and gastritis on numerous occasions. It is noteworthy that Plaintiff was pregnant during much of that time period. Her symptoms on June 26, 2012, were diagnosed as complications with her pregnancy. (ECF No. 11-1, pp. 174-77). Her symptoms on July 15, 2012, were diagnosed as a UTI. (ECF No. 11-1, pp. 178-81). Her symptoms on August 9, 2012, were associated with an accidental fall. (ECF No. 11-1, pp. 184-87). Her symptoms on September 8, 2012, were diagnosed as a kidney stone and UTI. (ECF No. 11-1, pp. 188-94). Her symptoms on November 17, 2012, were diagnosed as Gastroenteritis. (ECF No. 11-2, pp. 109-12). Her symptoms on April 22, 2013, were diagnosed as a UTI. (ECF No. 11-2, pp. 119-25). Her symptoms on May 16, 2013, were diagnosed as a UTI. (ECF No. 11-2, pp. 135-39). A CT scan of her left abdomen was conducted on April 25, 2014, and was unremarkable. (ECF No. 11-2, pp. 126-34). An EGD performed on April 24, 2012, prior to the alleged onset date, did show mild chronic inflammation, but was otherwise normal. (ECF No. 11-1, pp. 143-69). Despite finding mild chronic inflammation on April 24, 2012, Plaintiff's abdominal impairments after that date except one were all attributed to other diagnoses: UTI, pregnancy complications, accidental fall, and a kidney stone. Although Plaintiff's issues with UTIs are recurrent, there is no evidence on the record that her UTIs or other diagnoses were persistent and unalleviated by treatment with medication. Accordingly, this Court finds Plaintiff's argument on this issue is without merit.

### B.     Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. The ALJ considered Plaintiff's own statements that she was scared and nervous when she was outside her home alone and had difficulty interacting with family, friends, neighbors, co-workers, and others. Id. The ALJ further considered the fact that Plaintiff had never received any formal mental health treatment other than her special education classes in high school. (ECF No. 11, p. 24). The ALJ also considered that Plaintiff: was able to care for her children and pets; managed her personal care; washed laundry; washed dishes; cleaned the house with rest breaks; managed finances; managed her own healthcare appointments and medicine; and drove with someone accompanying her. (ECF No. 11, pp. 21-22). The ALJ also noted Plaintiff's reports of driving activity were inconsistent with her reports to Dr. Efird. (ECF No. 11, p. 21).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court

concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C. ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered and discussed the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform a full range of work at all exertional levels with some nonexertional limitations. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of many Sparks ER attending physicians, those of Drs. Frankie Clark, Terry Efird, Clifford Evans, Christal Janssen, and Susan Daugherty, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts

17

among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

### D.      Failure to Properly Develop the Record:

Plaintiff argues the ALJ should have acquired an up-to-date psychological evaluation to resolve an inconsistency in Plaintiff's medical records from 2010 and 2011. The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis."

Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014) (quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

Neither Dr. Clark's March 30, 2010, assessment nor Dr. Efird's September 23, 2011, assessment is sufficient to show Plaintiff suffered from a severe mental impairment from either the alleged onset date of June 2, 2012, or Plaintiff's application date of September 3, 2013, through the date of the ALJ's decision. Moreover, there is no evidence in the record which would provoke the ALJ to request a new mental diagnostic evaluation. As discussed above, the record contains no evidence Plaintiff ever reported symptoms, requested information, was prescribed medicine, or sought specific treatment for any mental health impairment described or diagnosed by Dr. Clark or Dr. Efird after Plaintiff's alleged onset date. Accordingly, this Court finds Plaintiff's argument on this issue is without merit.

### E.   Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing past relevant work as a labeler/stamper. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.    Conclusion:**

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of September, 2016.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE